**Dated: August 04, 2010**

**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

NOT FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
DENNIS C. HULL,                                Case No. 10-81161-TRC
                                                             Chapter 11
                Debtor.

ORDER PROHIBITING THE USE OF CASH COLLATERAL

This matter came on for evidentiary hearing on July 21, 2010, upon the McCurtain County National Bank's Emergency Motion for Order Prohibiting Use of Cash Collateral filed July 13, 2010, (Docket Entry 19) and Debtor's Response (Docket Entry 33). Robert Inglish appeared for Movant, Gary Hammond appeared for Debtor, and Katherine Vance appeared on behalf of the Office of the United States' Trustee. After hearing testimony and receiving evidence, the Court took the matter under advisement, and allowed all parties additional time to submit written summaries with requests for relief. After review, the Court finds that the Motion should be granted.

This bankruptcy was filed on July 2, 2010. Debtor had previously been in a Chapter 13 bankruptcy in this Court, Case No. 10-80020-TRC, filed in January of 2010. That case was

dismissed on June 15, 2010, without Debtor ever making a plan payment. Mary Tidwell, Executive Vice President and Loan Officer for McCurtain County National Bank ("Bank"), testified that Debtor filed this bankruptcy on the eve of a state court hearing regarding a replevin action of Debtor's property by Bank. She stated that Debtor has two loans with Bank. The first loan is evidenced by a promissory note from Debtor and his spouse listing collateral as certain real estate including storage unit and all machinery and equipment, and a mortgage on the real property in McCurtain County, Oklahoma. Debtor operates the Bayou Restaurant on this property, and also leases storage units on the property. Debtor has a second loan with Bank secured by various farm equipment, personal property, and restaurant equipment, as well as all accounts receivable and proceeds from the restaurant operation. Bank filed two Proofs of Claim ("POCs") in Debtor's Chapter 13 case, one for each loan, and both claiming a security interest in Debtor's assets. The supporting documentation for the second loan includes in the list of security: "All machinery and equipment, furniture and fixtures, inventory and the proceeds from the Bayou."

Tidwell testified that she visits the restaurant often and observed that it always appeared to be busy with customers. The restaurant is open on Fridays, Saturdays and Sundays, and Debtor is only on the property on those days. Tidwell stated that Debtor currently owes $282,902.86 on the first loan, and $40,268.85 on the second loan. He has not made a payment to Bank since October of 2009. Bank has been forced to purchase insurance for the property. Bank has not authorized Debtor to use the cash collateral from the restaurant nor has Debtor provided any information to it regarding when he will make a payment. Tidwell believed that Debtor closed his bank account with Bank, into which he was to make deposits from his restaurant. Tidwell identified an appraisal prepared on the restaurant and storage units in 2007 in connection with Debtor's purchase of the

property. That appraisal included a fair market value for the restaurant property of $340,000, and $40,000 in restaurant equipment.

The Debtor testified that he had not made any plan payments while in Chapter 13 bankruptcy and that there has been no change in his financial position since that case was dismissed and this case filed. He admitted that he does not have any type of insurance on the property pledged to Bank, does not pay real estate taxes, nor does he file withholding reports on his restaurant employees.[1] He stated that he uses the money he makes from the Bayou to run the business, although he has not sought court approval to do so. He does have a payroll account at one bank and has another bank account from which restaurant food suppliers draw. He admitted that he has taken cash from the business to his home and kept it there, rather than depositing it at a bank, but he stated that he has discontinued this practice. He estimated that currently he has approximately $2,200 in cash at home and between $1,200 and $1,500 in his bank accounts. He also estimated the gross receipts from the restaurant for the month of July to date to be $17,000, and stated that the restaurant operates at a loss. He has contacted an insurance agent about securing insurance but had not had time to finalize that by the hearing. His post-hearing brief states that he has now secured insurance but no proof was provided to the Court. On the days the restaurant is closed, he does errands, takes care of his mother's cattle, or performs other work on property in Bryan County. He receives some income from his mother on an annual basis. He stated that he intends to increase income by getting a full-time job, increasing the days his restaurant is open, raising the prices he charges at the restaurant,

---

[1] Debtor's post-hearing brief claims that restaurant workers are considered contract employees, thus he is not required to withhold taxes or file withholding reports. He has since learned that he must withhold so he has obtained a taxpayer ID number and will properly withhold and account for payroll taxes.

and rent more storage units. Debtor also admitted that he may have used some of the restaurant's receipts to pay for personal expenses for him and his wife.

Pursuant to § 363(c)(2), a debtor may not use "cash collateral" without the consent of the entity that has an interest in the collateral or the court, after notice and a hearing, authorizes the use of the collateral. Where an entity with an interest in cash collateral is provided adequate protection, then the debtor may use cash collateral. Debtor's response and brief dispute Bank's claim that it has a security interest in the cash collateral. However, based upon the evidence supplied by Bank, this Court is satisfied that Bank has established the existence of a security interest in the restaurant's cash receipts, and that Debtor needs this Court's permission to use those receipts in the operation of his business.

Bank argues that Debtor's actions reflect an abuse of this Court's process and clear desire to evade his creditors. Bank also argues that based upon Debtor's own testimony, he is operating at a loss and is not insuring the property as required, thus diminishing the value of Bank's collateral. He made no adequate protection payments during his previous bankruptcy, and has failed to account for the restaurant's receipts. Thus, Bank requests that Debtor be ordered not to use cash receipts, turn over all cash on hand, and allow it to secure any inventory. Debtor argues that he should be allowed to reorganize, that Bank is oversecured, that he has taken steps to correct all the problems with this business, and that he will soon generate sufficient income to make payments to Bank. However, if Bank's motion is granted, he will essentially be put out of business. He requests that, at most, he only be required to remit fifty percent of the net proceeds from the restaurant.

Courts are given discretion in deciding issues regarding adequate protection for parties claiming an interest in collateral, and should decide such issues flexibly upon the particular facts of

each case. *MBank Dallas, N.A., v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)(citations omitted). Creditors must be adequately protected to compensate them for the declining value of collateral while the automatic stay is in place. This Court is sympathetic to most debtors that appear before it and wishes to use its authority to assist those "honest, but unfortunate debtors." However, it appears from the record and Debtor's own testimony that he has used the process of this Court to avoid paying his creditors. One of this Court's duties is to issue any order necessary or appropriate to carry out the provisions of this title, including the prevention of an abuse of process. 11 U.S.C. § 105(a).

The Court finds that Debtor's promises to abide by his responsibilities as a debtor in possession are not likely to be fulfilled, given his history. He could not account for his restaurant's income or expenses, and was vague in his answers regarding his activities and expenditure of business funds for personal use. Much of his testimony was not credible. He has operated this restaurant as a debtor in possession for more than six months without making a single payment to a secured creditor. He has not provided this Court with a planned budget of how much cash he needs to operate his business, or any supporting documentation. He has not opened a debtor-in-possession bank account.

Based upon this record, the Court finds that Bank's Motion should be granted.

IT IS THEREFORE ORDERED that the Emergency Motion for Order Prohibiting Use of Cash Collateral (Docket Entry 19) is **granted**.

IT IS FURTHER ORDERED that Debtor shall turn over and remit to McCurtain County National Bank all cash receipts from the operation of the Bayou Restaurant in Debtor's possession, custody or control, and continuing until further order of the Court.

IT IS FURTHER ORDERED that Debtor shall turn over and remit to McCurtain County National Bank all cash receipts from the operation of the storage unit business in Debtor's possession, custody or control, and continuing until further order of the Court.

IT IS FURTHER ORDERED that Debtor shall secure all inventory from the Bayou Restaurant and turn over the keys and provide access to the restaurant and storage facility to McCurtain County National Bank.

###